UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

UBER, INC.,

               *Plaintiff*,

      -against-

UBER TECHNOLOGIES, INC.,

             *Defendant*.

-----------------------------------------------------------------------x

Index No.: 1:20-cv-02320

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Uber, Inc. ("Plaintiff" or "Uber"), by and through its attorneys Leichtman Law PLLC, Tzimopoulos Law, P.C. and Mavronicolas Law Group PLLC, brings this action against Defendant Uber Technologies, Inc. ("Defendant" or "Uber Technologies"), and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for trademark infringement, reverse confusion, unfair competition and false designation of origin, deceptive trade practices, and unjust enrichment under federal, state, and common law. Plaintiff Uber brings this action in response to the unauthorized use of its trademark, "UBER," by Defendant in connection with the advertising, promotion, and sale of Defendant's services in commerce.

2.     Plaintiff Uber is an award-winning creative and consulting services agency that provides advertising, business, and technology services, including but not limited to those with regards to graphic and electronic design, print design, packaging design, event design, social media advertising and strategy, creative consultation services, brand concept and brand development services, design of information graphics and data visualization materials, graphic

1

illustration, and production (collectively referred to herein as "Plaintiff's Business Services" or "Business Services") based out of New York, New York, United States.  Plaintiff Uber's advertisements have been featured in international and national publications, and its services are regularly purchased or hired by private, public, and non-profit entities.

3.      Plaintiff Uber originally incorporated on January 7, 1999.  Over time, through diligent personal effort and significant financial investment by its principal and sole owner, Herta Kriegner, Plaintiff Uber grew from nothing into a premiere one-stop shop for its Business Services, utilized and sought after by well-known domestic and international brands.

4.      Since its incorporation, Plaintiff Uber has used the word mark "UBER" (the "Mark", or "UBER") throughout the State of New York and throughout the United States in connection with the advertising, sale, and promotion of Plaintiff's Business Services to the general public.

5.      The primary means by which Plaintiff Uber promotes the Mark is through its websites, www.uber-inc.com and www.uber.nyc.   In addition to online points of contact, Plaintiff's Business Services—readily identifiable to consumers via the Mark—have been promoted and advertised to clients and third-party consumers, through distribution of its work, by word of mouth, in print publications, through sponsorships, at large-scale vendor events, and through recognition from multiple award academies.

6.      Since its inception, Plaintiff Uber has continuously and prominently used UBER as a trade name and service mark in connection with the promotion, sale and offers to sale, and advertisement of Plaintiff's Business Services to consumers and the general public.

7.      On June 8, 2019, after having continuously used the Mark in connection with the sale, promotion and advertisement of Plaintiff's Business Services for over two decades, Herta

Kriegner ("Ms. Kriegner"), the President and sole owner of Plaintiff Uber, filed an application on Plaintiff Uber's behalf for federal trademark registration of the Mark with the United States Patent and Trade Office (the "USPTO"), in connection with the advertising and sale of its Business Services in both Classes 35 and 42 (the "Application"), serial number 88465110.  The Application has been assigned to Plaintiff Uber, and is pending.

8.      Defendant Uber Technologies is a multi-billion dollar technology company offering a variety of business and technology services to consumers, including but not limited to ride-sharing, food delivery, employment recruiting, and logistics (such as freight shipping). Defendant incorporated on July 16, 2010, approximately eleven (11) years after Plaintiff had been continuously using the Mark in commerce in connection with the advertising, sale, and promotion of its Business Services.

9.      Upon information and belief, Defendant's revenue generation and consumer brand awareness are largely due in part to aggressive and large-scale advertising.  The primary method by which Uber Technologies has and continues to promote, sell, and advertise its services to consumers in commerce nationwide is through use of the word "Uber" as an abbreviation of its full business name.

10.     It is undisputed that since at least 2012, Uber Technologies' executive and/or managerial personnel have had actual knowledge of Plaintiff Uber's business existence and its brand.  This actual knowledge included the fact that Uber Technologies knew that Plaintiff Uber used the Mark as their sole brand identity to the consuming public and had been using it for years prior to Uber Technologies' existence.

11.     Despite having actual knowledge of Plaintiff Uber's trademark usage for many years, the single word "Uber" has and continues to permeate Defendant's business offerings as its brand identification to consumers, to the Plaintiff's detriment.

12.     Since Uber Technologies came into existence eleven (11) years ago and began using the word "Uber" in its marketing, consumers, employees and contractors of the Defendant, and government agencies have repeatedly and overwhelmingly confused Plaintiff's business as Defendant's.   This confusion has included, but is not limited to, Uber Technologies' own employees arriving at Plaintiff's office mistakenly believing it to be their own, Plaintiff receiving almost daily calls from angry Uber Technologies consumers, visits from disgruntled Uber Technologies consumers, demands from Uber Technologies' employees, contractors and affiliates requesting compensation or seeking customer support, and New York State Unemployment Insurance and Worker's Compensation claims directed at Defendant which are charged to Plaintiff's insurance.  In addition to the aforementioned confusion, Plaintiff has and continues to receive harassing and threatening communications from Uber Technologies consumers and contractors, and numbers of Defendant's employees—including senior executives—have and continue to identify themselves on social media and elsewhere as being employees of Plaintiff Uber.  In other words, the confusion between Plaintiff and Defendant is rampant and out of control.

13.     Plaintiff has and continues to receive from federal, state, and local agencies and private claimants, workers compensation requests, wage garnishment requests, employee background check requests, child support documentation, unemployment insurance forms, subpoenas, and litigation related documents intended for Uber Technologies.

14.     Because this confusion has, and continues to, cause extreme disruption and burden Plaintiff Uber's business, Plaintiff Uber has attempted on numerous occasions throughout the years

to contact Defendant in an effort to resolve this ongoing issue.  In response, Defendant has done virtually nothing to ease the confusion and address the deluge of daily items misdirected at Plaintiff intended for Defendant.

15.     Defendant's lack of attention to the confusion belies a complete lack of good faith in addressing the confusion it has caused.

16.     While Plaintiff was trying to persuade Uber Technologies to address the confusion with no success, it did not file a lawsuit until now because Plaintiff was concerned about the expense to do so and understood that Uber Technologies' business did not compete with Plaintiff's business.

17.     However, Plaintiff recently learned that Uber Technologies recently created a new business division entitled "Uber Design," supported by websites located at www.brand.uber.com and www.medium.com/uber-design, and with its principal location in New York.

18.     Upon information and belief, the services offered in connection with Uber Technologies' new division relate to the provision of digital tools, platforms, and guidelines to enable consumers to utilize Uber Technologies in ways that compete directly with Plaintiff's business.

19.     Defendant Uber Technologies has pursued multiple federal trademark registrations with the USPTO for its variety of products, most of which contain the word "Uber" at least as a partial component.  Some registrations are based on actual use, while others are based on an intent-to-use basis.

20.     Many of Defendant's federal trademark registrations cover services in Classes 35 and 42, in direct competition with Plaintiff Uber's Business Services and Application.

21.     On September 12, 2019, Plaintiff received an Office Action response from the USPTO on its Application, indicating amongst other things that its registrability was at risk of being rejected due to a likelihood of confusion due to similarity to Uber Technologies' trademark applications and registrations.

22.     While Plaintiff Uber has, for multiple years and as the lawful senior user of the Mark, attempted to confront junior user Uber Technologies on numerous occasions about ceasing use of the Mark, Uber Technologies has brazenly ignored Plaintiff's pleas for consideration and reconciliation, and has instead chosen to saturate the consumer marketplace with unauthorized use of the Mark for its own commercial benefit, including expansion of the Mark into Plaintiff's Business Services.  The recent Office Action received by Plaintiff, coupled with Defendant's recent entrance into Plaintiff's line of business as a direct competitor with "Uber Design" and the likelihood that it will attempt federal trademark registration of the same, has added to the actual confusion, created a further likelihood of confusion amongst consumers as to the source of both parties' services, and indicates manifestation into *bona fide* willful trademark infringement of, and tortious interference with, Plaintiff's business, without justification.

23.     As the first user in commerce of the Mark, Plaintiff Uber is the lawful and equitable owner of the Mark, and this action is commenced in order to ensure that its brand, business, and goodwill will no longer suffer as a result of Uber Technologies' willful, wanton, and intentional infringement, deceptive trade practices, and unfairly competitive use of Plaintiff's Mark.

**PARTIES**

24.     Plaintiff Uber is a New York corporation with its principal place of business and headquarters located at 231 West 29th Street, Suite 906, New York, New York 10001.

25.     Defendant Uber Technologies is a Delaware corporation with its principal place of business and headquarters located at 1455 Market Street, 4th Floor, San Francisco, California 94103.   According to the Delaware Department of State, Defendant has designated National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware 19904, as its registered agent upon whom process against Defendant may be served.

26.     In addition, Defendant is registered in New York as a foreign business corporation, with its principal place of business located at 111 Eighth Avenue, New York, New York 10011. According to the New York Department of State, Defendant has, for the purposes of this entity registration, designated C T Corporation System, 28 Liberty Street, New York, New York 10005 as its registered agent upon whom process against Defendant may be served.   Moreover, on information and belief, the principal location from which Defendant offers its design services under the "Uber Design" brand name is in New York, New York.

**JURISDICTION AND VENUE**

27.     This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act"), and the laws of the State of New York.

28.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).   This court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367(a).   Alternatively, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

29.     The Court has personal jurisdiction over Defendant Uber Technologies because the injuries Plaintiff complains of herein occurred in the State of New York, because Defendant is registered as a foreign business corporation and has a principal place of business in the State of New York, and because it transacts a significant amount of business in the State of New York.

30.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial number of the events and omissions giving rise to this action occurred in this District.

## **BACKGROUND FACTS**

31.     Plaintiff Uber is an award-winning seller of its Business Services to business entities and individuals.

32.     Plaintiff has won many awards for its Business Services, including from prestigious design competitions and authorities, such as the Hermes Creative Award in 2009, the Summit Creative Award in 2000, 2001, 2003, and 2006, the Communicator Awards in 2001 and 2015, as well as many more.

33.     Plaintiff Uber primarily promotes and advertises its Business Services to the public through its websites, www.uber-inc.com and www.uber.nyc, as well as by sponsoring high-profile events, purchasing advertisement pages in print publications, and through word-of-mouth references from preexisting clients.  True and correct copies of a portion of the www.uber-inc.com and www.uber.nyc websites' home pages, an example of one of Plaintiff's magazine advertisements, certain awards Plaintiff has won for its Business Services, as well as a flyer for one of Plaintiff's sponsored events, all showcasing Plaintiff's use of the Mark in its business advertising, are hereto attached as **Exhibit 1**.

34.     Plaintiff Uber was incorporated on January 7, 1999.  By at least January 1999, Plaintiff began using UBER as both a trade name and as a service mark in the State of New York.

35.     Ms. Kriegner is of European descent.  "Über" is a European word which denotes an outstanding or supreme example of a particular kind of person or thing.  Ms. Kriegner purposefully adopted the UBER word mark as Plaintiff's business brand identity to indicate to consumers that Plaintiff's services were of extraordinarily superior quality, with a hint of European sophistication and flair.

36.     The Mark is arbitrary in describing the Business Services that Plaintiff sells to consumers and the public.  Because it is arbitrary, it is inherently distinctive, and in any event has acquired secondary meaning to consumers throughout the years as a source identifier for Plaintiff's Business Services.

37.     Since at least January 1999, Plaintiff Uber has and continues to use UBER as a distinctive trade name and trademark continuously, prominently and openly to represent its company and its business, the services it provides, and its unique and special business character. In order to successfully and efficiently promote and advertise Plaintiff's Business Services, Plaintiff adopted the Mark immediately upon its incorporation as both a trade name and as a service mark so as to concisely inform consumers of the source of the services they provide for sale.  Since at least January 7, 1999, Plaintiff Uber has continuously used the Mark in connection with promoting, advertising, and selling its services to consumers.

38.     Plaintiff is the current owner of the domain names for four (4) different websites: www.uber.nyc,          www.uber-inc.com,          www.ubercustomerservice.com,          and www.ubercustomercare.com.  Plaintiff purchased these domain names in order to be able to effectively market, promote, and represent its brand to consumers nationwide.  These web pages are accessible to consumers anywhere, and Plaintiff Uber intentionally invested in these websites so as to increase their brand visibility past consumers in the State of New York and internationally.

39.     Since its inception and through its quality-controlled branding and advertising efforts, Plaintiff Uber has sold its Business Services to high-profile domestic and international clients such as BMW North America, Smithfield Foods, Clinique, and Macy's, and earned a reputation as an exceptional brand for design services of many types.

40.     Defendant Uber Technologies, a business services and technology company offering a variety of services to consumers, incorporated on July 16, 2010, approximately eleven (11) years after Plaintiff had been continuously using the Mark in commerce for sale of its Business Services.

41.     Defendant began by simply providing technology services that included the software used to facilitate a ride-sharing service to consumers, but has since diversified its business services portfolio exponentially, now offering services ranging from food delivery (Uber Eats) to logistics such as freight shipping (Uber Freight), employment recruiting (Uber Works), and most recently, design services in direct competition with Plaintiff (Uber Design).

42.     Since its incorporation, Defendant has grown astronomically in the consumer marketplace in brand awareness and, consequentially, in revenue, now allegedly valued at billions of dollars.  For example, Uber Technologies recently reported that its quarterly revenue for the quarter ended December 2019 was approximately $4.1 billion.

43.     The primary method by which Uber Technologies has and continues to promote, sell, and advertise its services to consumers in commerce is through use of the word "Uber" as an abbreviation of its full business name.

44.     In fact, the word "Uber" has become the sole moniker by which Uber Technologies identifies itself in the marketplace, attached only to other words to indicate other services it provides (e.g. Uber Air, Uber Eats, Uber Freight, Uber Works, Uber Design).

45.     The single word "Uber" has and continues to permeate Defendant's business offerings, ranging from its ubiquitous ride-sharing software application (downloadable for free to consumer's personal telephones) to its various print and digital advertisements, and through its website, www.uber.com, which is strikingly and confusingly similar to that of Plaintiff's.  Upon information and belief, Uber Technologies has never marketed itself to consumers as "Uber Technologies," and has now monetized the word "Uber," standing alone, to the tune of many billions of dollars.  True and correct copies of a portion of Uber's website homepage, where the "Uber" word is prominently displayed, and advertisements showing the same are attached hereto as **Exhibit 2**.

46.     On May 10, 2012, less than a year after Uber Technologies entered the New York marketplace with its ride-dispatching services, and after receiving numerous calls at her business for a car service, Ms. Kriegner attended the RandLuxury Review conference held at Metropolitan Pavilion in the State of New York.  There, she saw a table set up for Defendant Uber Technologies and first became aware of Defendant's existence.  After approaching the two individuals at the table— who identified themselves as Josh Mohrer, the ex-General Manager of Uber Technologies' New York office, and Ed Casabian, an ex-marketing representative of Defendant— and informing them that Plaintiff had been operating under the same business name for over a decade and that she was receiving calls directed to Defendant, Ms. Kriegner was told by the two Uber Technologies employees cavalierly that she should change Plaintiff's business name "because they [Defendant] are growing."

47.     Over the next several years, the calls looking for Defendant at Plaintiff's business increased.  Angry consumers, Uber Technologies employees and contractors, and other various individuals mistakenly believing Plaintiff to be Uber Technologies were repeatedly harassing

Plaintiff, despite being informed by Ms. Kriegner of the lack of relationship or affiliation, or endorsement of, Defendant's business.

48.     When Defendant refused to act to make any effort to stop the confusion in the marketplace, Plaintiff spoke with the press, and the case garnered national attention.

49.     For example, on November 25, 2014, the New York Post published an article titled, "Uber makes life miserable for design company with the same name" on its website, www.nypost.com, further putting Uber Technologies as a whole on constructive notice that the confusion was damaging Plaintiff's business and goodwill.  On December 5, 2014, the New York Times published an additional article titled, "über vs. Uber" on its website, www.nytimes.com. MYFOXNY thereafter posted a substantially similar article on the same day.  True and correct copies of these articles as published are hereto attached as **Exhibit 3**.

50.     Starting in approximately December 2015, Plaintiff began explicitly telling all misinformed callers to contact Mr. Casabian directly.  Upon information and belief, after complaining to Ms. Kriegner that he couldn't handle the volume of calls he was receiving, and after Ms. Kriegner again requested that Uber Technologies implement a solution to mitigate further confusion between the parties, Mr. Mohrer contacted Ms. Kriegner on Defendant's behalf to discuss resolving the conflict.

51.     On December 18, 2015, Mr. Mohrer and Ms. Kriegner met in person, and Mr. Mohrer offered Plaintiff $80,000.00 USD on the condition that Plaintiff change its business name entirely, despite the fact that Plaintiff had senior rights in the Mark, had invested at that point nearly two decades of sweat equity into the brand, and the company represented Ms. Krieger's life-work.

52.     On February 23, 2016, Ms. Kriegner sent Mr. Mohrer an e-mail correspondence rejecting his offer, counter-offering with a demand of $800,000.00 USD and detailing the grievances Plaintiff had suffered as a business as a result of Defendant's infringing junior usage of the Mark.  This correspondence explained all of the costs and efforts that would be required in order for Plaintiff Uber to change its name as Defendant proposed, and that such costs would continue to increase so long as the matter was left unattended to reflect the actual damages Plaintiff had suffered, the funds needed to rectify the harm already caused, and what would be needed for Plaintiff to rebrand itself.  A true and correct copy of this e-mail correspondence is attached hereto as **Exhibit 4**.

53.     On February 24, 2017, after one year had passed and having never received a response from Mr. Mohrer about her counter-offer, Ms. Kriegner again e-mailed Mr. Mohrer detailing additional misdirected claims and tangible goods sent to her office directed towards Uber Technologies, and requesting a response to her counter-offer.  A true and correct copy of this e-mail correspondence is attached hereto as **Exhibit 5**.

54.     On February 26, 2017, Mr. Mohrer responded by e-mail to Ms. Kriegner and suggested a telephone conversation.  Ms. Kriegner and Mr. Mohrer spoke on the telephone on February 27, 2016, in which he claimed that the most Defendant could offer was $120,000.00 USD to compensate Plaintiff, and again insisting that the $120,000.00 USD was conditioned on Plaintiff changing its company name and brand.  Ms. Kriegner rejected this updated offer from the Defendant as insufficient, and has not heard from Mr. Mohrer or Defendant since, despite multiple efforts over several years to further engage in conversation.

55.     Since these exchanges, Ms. Kriegner has attempted on multiple occasions to contact individuals at Uber Technologies about Defendant's improper uses of the Mark and the damage

the confusion has caused to Plaintiff, to no avail.  As examples, true and correct copies of one such e-mail exchange between Ms. Kriegner and one Uber Technologies employee describing a particularly misguided and harassing phone call Plaintiff received on November 7, 2017, as well as a message Ms. Kriegner sent to Mr. Mohrer over LinkedIn on February 8, 2019, are attached hereto as **Exhibit 6**, with personally identifying information redacted.

56.     Besides suffering, on a daily basis for over a decade, from angry and harassing phone calls intended for Uber Technologies, Plaintiff has received a persistent barrage of additional unwanted communications and interference with its business operations as a result of the consumer confusion between Uber, Inc. and Uber Technologies.  This confusion has included, but is not limited to,  scheduled shipments of tangible goods (approximately 10,000 backpacks) in Uber Technologies' name to Plaintiff's office, Uber Technologies' own employees or contractors arriving at Plaintiff's office mistakenly believing it to be their own, and Plaintiff receiving multiple telephone calls and correspondences almost every single day from angry consumers and Uber Technologies employees or contractors requesting compensation or customer support.  A true and correct copy of a call log reflecting a sample of misdirected calls is attached hereto as **Exhibit 7**, with personally identifying information redacted.

57.     Indeed, some of Defendant's own senior executives have even identified themselves as being employed by Uber, Inc.  Remarkably, both Mr. Mohrer and Mr. Casabian, who were well aware personally of the difference between the two companies, listed their employers as "Uber, Inc.," indicating that the confusion has permeated well beyond the uninformed public.  True and correct copies of screenshots of Mr. Mohrer's and Mr. Casabian's LinkedIn pages as of December 19, 2015 showcasing the misattributed employment are hereto attached as **Exhibit 8**.

58.     The confusion in the marketplace has and continues to extend to federal and state government agencies, law offices, and private and public companies.  Plaintiff has and continues to receive workers compensation requests, wage garnishment requests, small business loan documentation, employee background check requests, child support documentations, unemployment insurance forms, subpoenas, and lawsuit documents intended for Uber Technologies personnel but directed to Plaintiff's attention.  A true and correct copy of examples of a portion of these documents, addressed to Uber, Inc. and clearly confusing Plaintiff as Uber Technologies, is attached hereto as **Exhibit 9**, with personally identifying information redacted.

59.     The confusion in the marketplace has even extended to artificial intelligence.  For example, consumers utilizing iPhone's "Siri" virtual assistance feature are constantly mislead to believe that Uber Technologies is in fact Plaintiff.  True and correct copies of examples of the results that "Siri" generates when consumers request information for Uber Technologies are hereto attached as **Exhibit 10**.

60.     As if things could not get any more difficult for Plaintiff to run its business without interference, on April 29, 2019, Ms. Kriegner ran a credit report with Equifax, a credit reporting agency for businesses, which rated Plaintiff's business as an "F."  This credit report has Plaintiff's correct address, but the business name is incorrectly listed as Uber Technologies, Inc., mistakenly lists an Uber Technologies driver as an employee of Plaintiff, and identifies Plaintiff as having liens and judgments against it (which it does not).  A true and correct copy of a screenshot of this credit report is hereto attached as **Exhibit 11**.

61.     The confusion and interruption to Plaintiff's business is so burdensome that Ms. Kriegner was forced to develop an entire new page on Plaintiff's website,  www.uber.nyc, titled "Uber vs. Uber" in an attempt to steer confused, mistaken customers back to Defendant and put

customers on constructive notice of the lack of relationship. In addition to the new page, Plaintiff was forced to place a distracting pop-up notice on its homepage explaining the same. A true and correct copy of a portion of the "Uber vs. Uber" comparison page on Plaintiff's website is hereto attached as **Exhibit 12**.

62. On June 8, 2019, after having continuously used the Mark in connection with the sale, promotion and advertisement of its services for over two decades, Ms. Kriegner filed the Application for federal trademark registration of the Mark with the USPTO, in connection with the advertising and sale of creative design services in Classes 35 and 42. The Application is still pending. Plaintiff Uber is the lawful owner of the trademark rights in the Application and the Mark.

63. Since its inception, Uber Technologies has pursued multiple federal trademark registrations with the USPTO for its variety of products, most of which contain the word "Uber" at least as a partial component. Some registrations are based on actual use, while others are based on an intent-to-use basis.

64. Many of Defendant's federal trademark applications claim services in Classes 35 and 42, in direct competition with Plaintiff Uber's own Application.

65. Uber Technologies recently created a new business division titled "Uber Design." Upon information and belief, the services offered in connection with this division relate to the provision of digital tools, platforms, and guidelines to enable consumers to utilize Uber Technologies' proprietary design assets in their own unique ventures. True and correct copies of a sample of Defendant's usage of "Uber Design" in commerce, as well as Defendant's brand webpage promoting "Uber Design" as fundamental to its brand composite, are hereto attached as **Exhibit 13**.

66.     On August 20, 2019, Plaintiff's counsel, Tzimopoulos Law, P.C., sent a formal cease and desist letter to Defendant, describing the numerous transgressions Plaintiff has suffered as a result of the consumer confusion between the two parties.  Defendant did not respond or acknowledge receipt of the letter.  A true and correct copy of this letter is hereto attached as **Exhibit 14**.

67.     On September 12, 2019, Plaintiff received an Office Action response from the USPTO on the Application, indicating amongst other things that its registrability was at risk of being rejected due to a likelihood of confusing similarity to Uber Technologies mark applications and registrations, many of which are filed under the same classes of services and others which are within the natural zone of natural expansion.  This risk will undoubtedly be compounded if Uber Technologies pursues a federal trademark registration for "Uber Design."

68.     Since Uber Technologies came into existence, Plaintiff Uber has continuously suffered extreme, persistent, and harmful interference with its business stemming from consumers and entities confusing it with Uber Technologies, when the companies in fact have no relationship. This damage is directly attributable to Defendant's refusal to abandon use of the word "Uber" in connection with its business, despite having actual knowledge that they are infringing upon Plaintiff's senior legal and equitable priority in the Mark.

69.     Because this confusion has, and continues to, cause extreme disruption to the operations of Plaintiff Uber's business, Plaintiff Uber has attempted on numerous occasions throughout the years to contact Defendant in an effort to resolve this ongoing issue. Uber Technologies has failed to negotiate in good faith or discuss serious solutions to the problems it has imposed on the Plaintiff, and as a result of this, Plaintiff has incurred substantial disruption,

harassment, goodwill tarnishing, and expenses in attempting to address the continuous, overwhelming and vast confusion that the Defendant has been propagating.

70.    Upon information and belief, in addition to the injury caused to Plaintiff, the confusion caused by Defendant's consistent usage of the Mark in its branding has harmed hundreds of individuals seeking unemployment insurance, workers compensation benefits, child support assistance, or other types of recourse, as well as litigants who are unable to timely take action because of improper service of process.

71.    Defendant's brazen and unlawful disregard for Plaintiff's existence and use of the Mark, and Defendant's subsequent use thereof, has created both actual confusion and a likelihood of confusion as to the source of Plaintiff Uber's services as connected to the Mark, and has caused an inordinate amount of tortious interference with Plaintiff's business operations.

72.    Defendant's entrance into direct competition with Plaintiff with its "Uber Design" business has forced the Plaintiff to retain counsel to take action on its behalf.

73.    Given the Defendant's enormous size and marketplace presence, its disproportionate ability to finance advertising campaigns to limitless audiences, its established consumer presence in Plaintiff's business territory, and given the Defendants recent entry into the Plaintiff's primary business operation, Plaintiff has been irreparably harmed and its business and goodwill has been effectively swallowed whole by Defendant's actions in Plaintiff's primary marketplace and nationwide.   Plaintiff therefore seeks an injunction, damages, corrective advertising remedies, and related relief in the hopes of beginning to recover from the damage it has suffered.

**FIRST CLAIM FOR RELIEF**
**Federal Direct Trademark Infringement, 15 U.S.C. § 1125(a)**
**Defendant Uber Technologies**

74.    Plaintiff Uber incorporates by reference and re-alleges the allegations contained in Paragraphs 1 through 73, inclusive, as though fully set forth herein.

75.    The mark UBER as used by Plaintiff is a valid and legitimate trademark under federal law.  It is arbitrary because it is a dictionary defined word that otherwise has no descriptive relation to the services that Plaintiff offers and is therefore inherently distinctive as a source identification of services.  It has acquired secondary meaning amongst consumers as an indication of Plaintiff's premiere design services.

76.    Since January 1999, Plaintiff has and continues to prominently and unambiguously use the UBER mark in commerce in connection with the promotion, sale, and advertisement of its services.  Such use can be seen on Plaintiff's websites, print advertisements, digital media platforms, at sponsored events, and beyond.

77.    Because Plaintiff has been using the Mark since 1999 and Defendant did not come into existence until 2010, Plaintiff is the lawful senior first user, and has priority in the exclusive trademark ownership and exploitation rights in and to the Mark.

78.    Defendant's use of an infringing UBER trademark in connection with Defendant's sale, offers of sale, distribution, promotion and advertisement of graphic and other design services through digital and print advertisements, social media, and the Internet, accessible to consumers freely and readily, constitute Defendant's unlawful use of the Mark in commerce.  This use establishes a pattern by which Defendant has used the Mark in order to attract public attention to its business and as a designation of origin.

79.     Defendant's use in commerce, without Plaintiff's authorization, of a mark (as well as a related Internet domain name) confusingly similar to Plaintiff Uber's trademark, in connection with the advertising, promotion, and sale of Defendant's services, is improper and a violation of Plaintiff's rights.

80.     Defendant's creation of "Uber Design" renders at least a portion of Defendant's many business ventures as directly competitive and similar, or identical, to those offered by Plaintiff Uber under the Mark.

81.     Defendant's use of the Mark in connection with its advertising, promotion, and sale of goods and services has caused actual confusion as to the source identity of services amongst its own employees, consumers of both parties, Defendant's vendors, federal, state, and local government agencies and organizations, and the public at large, and has and is likely to continue to cause confusion, mistake or otherwise deceive, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

82.     Defendant has used and continues to use the UBER mark with actual knowledge that it is the exclusive property of Plaintiff, particularly in the area of Plaintiff's Business Services, and has engaged in the aforementioned activities with the intent to confuse and deceive the public into believing that Defendant and the services it publicizes, promotes and/or sells are affiliated with Plaintiff's, or that Defendant is the true source of design services under the UBER mark, when in fact neither is true.  Defendant's actions at all times have been without Plaintiff's consent.

83.     Defendant's activities create the false and misleading impression that Defendant is sanctioned, assigned or authorized by Plaintiff to use the UBER mark to advertise, promote, distribute, offer for sale or sell services under the UBER mark when Defendant is in fact unauthorized to do so.

84.     Defendant's use of the UBER mark tends to and does falsely create the impression that the services advertised, promoted, distributed and sold by Defendant are warranted, authorized, sponsored or approved by Plaintiff when in fact they are not, and tends to and does falsely create the impression that Uber, Inc. is not the true owner of the exclusive rights to the UBER mark and that Plaintiff is in fact the infringer.

85.     Defendant's unauthorized use of the UBER mark has resulted in Defendant unfairly benefiting from Plaintiff's diligent advertising and promotion of the Mark throughout the past decade and beyond, and unjustly profiting from exploiting and usurping Plaintiff's exclusive right and goodwill, all to the substantial and irreparable injury of Plaintiff, the public, and Plaintiff's Mark.

86.     Defendant's acts constitute willful trademark infringement in violation of the Lanham Act, 15 U.S.C. §1125(a).

87.     Defendant Uber Technologies has been unjustly enriched as a direct and proximate result of its harmful conduct, and has irreparably harmed Plaintiff Uber, including by causing Plaintiff Uber to spend significant resources responding to inquiries and comments relating to its lack of affiliation with Uber Technologies and trying to address and correct the vast and significant misimpressions Uber Technologies has created.  Pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to, and should be awarded, Defendant's profits and any damages sustained by Plaintiff, and the costs of this action.

88.     Defendant Uber Technologies' acts have damaged, and will continue to irreparably damage, Plaintiff Uber.  Plaintiff has no adequate remedy at law for all of these wrongs and injuries.  The damage to Plaintiff includes harm to its goodwill and reputation in the marketplace that money damages cannot compensate.  Plaintiff Uber is, therefore, entitled to a preliminary and

permanent injunction restraining and enjoining Uber Technologies from engaging in further unlawful abuse, and ordering Defendant to engage in corrective advertising.

## SECOND CLAIM FOR RELIEF
### Reverse Confusion, 15 U.S.C. § 1125(a)
### Defendant Uber Technologies

89.    Plaintiff Uber incorporates by reference and re-alleges Paragraphs 1 through 88, inclusive, as though fully set forth herein.

90.    The UBER mark is a valid, protectable trademark.  As herein described, Plaintiff Uber is the lawful and equitable exclusive owner of the rights in said trademark.

91.    Plaintiff Uber, having continuously used the Mark in commerce in connection with the advertisement, sale, and promotion of Plaintiff's services since at least January 1999, is the senior user of the Mark.  Defendant Uber Technologies, adopting the Mark for use in commerce over a decade later, is therefore the junior user of the Mark.

92.    Plaintiff has invested over two decades of financial and personal resources building its brand and reputation into what it is known as today.  Said reputation is vested primarily in Plaintiff's continued and uninterrupted use of the UBER mark as a designation of origin of its services.

93.    Defendant has used, and is continuing to use, an identical UBER mark in a manner confusingly similar to Plaintiff's own usage, without the consent of Plaintiff, and in a manner that is likely to cause confusion among ordinary purchasers as to the source of the goods.

94.    Defendant's actions are likely to lead, and have already actually lead, the public to conclude, incorrectly, that Plaintiff's creative design services originate from Defendant, which have already, and will continue to damage, both Plaintiff and the public.

95.     Defendant's use of the Mark as the junior user has injured senior user Plaintiff's business reputation, impaired its goodwill, and caused extreme and substantial personal and financial burden to Plaintiff's operations.  In addition, Defendant's unauthorized use of the Mark has the potential to lead the consuming public to believe that Plaintiff is an unauthorized infringer, which is in fact untrue and misleading.

96.      Defendant's unauthorized use of the UBER mark in interstate commerce as described above constitutes reverse trademark infringement and has already, and will continue, to cause consumer confusion, mistake, or deception.

97.     As a direct and proximate result of Defendant's reverse trademark infringement, Plaintiff has suffered and will continue to suffer loss of income, profits and goodwill, and Defendant has and will continue to unfairly acquire income, profits and goodwill from its unauthorized use of the Mark in its branding and business activity.

98.     As a result of this unauthorized activity, and pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to, and should be awarded, Defendant's profits and any damages sustained by Plaintiff, the costs of corrective advertising, and the costs of this action.

99.     Defendant Uber Technologies' acts have damaged, and will continue to irreparably damage, Plaintiff Uber.  Plaintiff has no adequate remedy at law for all of these wrongs and injuries.  The damage to Plaintiff includes an inability for Plaintiff to effectively advertise and promote its Mark, and harm to its goodwill and reputation in the marketplace that money damages cannot compensate.  Plaintiff Uber is, therefore, entitled to a preliminary and permanent injunction restraining and enjoining Uber Technologies from engaging in further unlawful abuse, and ordering corrective advertising be taken by Defendant.

## THIRD CLAIM FOR RELIEF
**Federal Unfair Competition and False Designation of Origin, 15 U.S.C. § 1125(a)**
**Defendant Uber Technologies**

100.    Plaintiff Uber incorporates by reference and realleges the allegations contained in Paragraphs 1 through 99, inclusive, as though fully set forth herein.

101.    In connection with Defendant's advertisement, promotion, distribution, sales and offers of sale of its services, Defendant has used in commerce, and continues to use in commerce, the UBER mark.

102.    In connection with Defendant's advertisement, promotion, distribution, sales and offers of sale of Defendant's services, Defendant has affixed, applied and used false designations of origin and false and misleading descriptions and representations, including the UBER mark, which tend to falsely describe the origin, sponsorship, association or approval by Plaintiff of Defendant's services.

103.    Defendant has used the UBER mark with actual or constructive knowledge of the falsity of such designations of origin, descriptions and representations, all to the substantial detriment of Plaintiff.

104.    Defendant's use of the UBER mark in connection with Defendant's services constitutes false descriptions and representations tending to falsely describe or represent Defendant and Defendant's services as being either authorized, sponsored, affiliated or associated with Plaintiff, or alternatively, that Defendant is the true origin of Plaintiff's design services, and that Plaintiff is the unauthorized infringer.

105.    Defendant has used the UBER mark with the intent to cause confusion and mistake, to deceive and mislead the public, to trade upon Plaintiff's reputation, branding, or goodwill, or to

create the impression that Plaintiff is trading upon Defendant's reputation, branding, or goodwill, and to improperly appropriate to itself the valuable trademark rights of Plaintiff.

106.    Defendant's acts constitute the use in commerce of false designations of origin and false or misleading descriptions or representations, tending to falsely or misleadingly describe or represent Defendant's services as those of Plaintiff's, or vice versa, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

107.    As a result of this unauthorized activity, and pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to, and should be awarded, Defendant's profits and any damages sustained by Plaintiff, the cost of corrective advertising, and the costs of this action.

108.    Defendant Uber Technologies' acts have damaged, and will continue to irreparably damage, Plaintiff Uber.  Plaintiff has no adequate remedy at law for all of these acts, wrongs and injuries.  The damage to Plaintiff includes harm to its goodwill and reputation in the marketplace that money damages cannot compensate.  Plaintiff Uber is, therefore, entitled to a preliminary and permanent injunction restraining and enjoining Uber Technologies from engaging in further acts, wrongs and injurious unlawful abuse, and ordering Defendant to pay for and engage in a campaign of corrective advertising.

### FOURTH CLAIM FOR RELIEF
**Injury to Business Reputation, N.Y. GEN. BUS. L. § 360-l**
**Defendant Uber Technologies**

109.    Plaintiff Uber incorporates by reference and realleges the allegations contained in Paragraphs 1 through 108, inclusive, as though fully set forth herein.

110.    Defendant's unauthorized use of the UBER mark and related Internet domain name in connection with the goods and services it provides has injured and continues to injure the business reputation of Plaintiff Uber, in violation of N.Y. Gen. Bus. L. § 360-l.

111.    Plaintiff has been and continues to be damaged by Defendant's acts, both in reputation and in personal and financial burden.

112.    Defendant Uber Technologies' acts have damaged, and will continue to irreparably damage, Plaintiff Uber.

113.    Plaintiff has no adequate remedy at law for all of these wrongs and injuries.  The damage to Plaintiff includes harm to its goodwill and reputation in the marketplace that money damages cannot compensate.

114.    Plaintiff Uber is, therefore, entitled to a preliminary and permanent injunction restraining and enjoining Uber Technologies from engaging in further unlawful abuse.

### FIFTH CLAIM FOR RELIEF
**Deceptive Trade Practices, N.Y. GEN. BUS. L. § 349**
**Defendant Uber Technologies**

115.    Plaintiff Uber incorporates by reference and realleges the allegations contained in Paragraphs 1 through 114, inclusive, as though fully set forth herein.

116.    Defendant's unauthorized uses of the UBER mark in connection with the advertising, sale, and promotion of its services, as well as its use of a related Internet domain name, are deceptive and misleading.

117.    By its usage of the Mark, Defendant's representations, particularly with the creation of "Uber Design", suggest that Defendant is the only, or otherwise lawfully exclusive, source for services confusingly to Plaintiff's , and are therefore deceptive and misleading.

118.    Plaintiff Uber has been and continues to be damaged by Defendant's acts.

119.    As a direct and proximate result of the use by Defendant of the UBER mark and related Internet domain name, Plaintiff has and continues to suffer enormous financial harm for which it is entitled to monetary recovery in an amount to be determined at trial, and has and

continues to suffer irreparable reputational harm to its business for which it has no adequate remedy at law.

### SIXTH CLAIM FOR RELIEF
**Common Law Trademark Infringement**
**Defendant Uber Technologies**

120.    Plaintiff Uber incorporates by reference and realleges the allegations contained in Paragraphs 1 through 119, inclusive, as though fully set forth herein.

121.    Defendant has, as described herein, without authorization from Plaintiff Uber, used in commerce, a confusingly similar or identical mark and related Internet domain name to Plaintiff in connection with the advertisement, offering for sale, sale, and distribution of its goods and services.

122.    Defendant's use of the UBER mark in connection with the advertising, promotion, and sale of its services has already caused actual confusion and will continue to cause actual confusion, mistake or deception.

123.    Plaintiff has been and continues to be damaged by Defendant's acts.

124.    As a direct and proximate result of the use by Defendant of the UBER mark and related Internet domain name, Plaintiff has and continues to suffer enormous financial harm for which it is entitled to monetary recovery in an amount to be determined at trial, and has and continues to suffer irreparable reputational harm to its business for which it has no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF
**Common Law Unfair Competition**
**Defendant Uber Technologies**

125.    Plaintiff Uber incorporates by reference and realleges the allegations contained in Paragraphs 1 through 124, inclusive, as though fully set forth herein.

126.    By its use of the UBER mark as described herein in connection with its goods and services, Defendant has misappropriated, and monetized, significant commercial advantages associated with the UBER mark that rightfully belong to Plaintiff. In doing so, Defendant has competed unfairly with Plaintiff.   Defendant's acts as described herein constitute unfair competition, in violation of the common law.

127.    By its use of the UBER mark as described herein in connection with its goods and services, and particularly with its creation of "Uber Design", Defendant has misappropriated commercial advantages associated with Plaintiff Uber's reputation as being the premiere company affiliated with the Mark offering creative design services.  In doing so, Defendant has competed unfairly with Plaintiff Uber, and the acts described herein constitute a violation of the common law.

128.    Plaintiff has been and continues to be damaged by Defendant's acts.

129.    As a direct and proximate result of the use by Defendant of the UBER mark and related Internet domain name, Plaintiff has and continues to suffer enormous financial harm for which it is entitled to monetary recovery in an amount to be determined at trial, and has and continues to suffer irreparable reputational harm to its business for which it has no adequate remedy at law.

**EIGHTH CLAIM FOR RELIEF**
**Common Law Unjust Enrichment**
**Defendant Uber Technologies**

130.    Plaintiff Uber incorporates by reference and realleges the allegations contained in Paragraphs 1 through 129, inclusive, as though fully set forth herein.

131.    Defendant has been unjustly enriched through its continuous and knowingly unauthorized use of the UBER mark, and Plaintiff has been injured as a result of such unauthorized use.

132.    Plaintiff has been and continues to be damaged by Defendant's acts.

133.    As a direct and proximate result of the use by Defendant of the UBER mark and related Internet domain name, Plaintiff has and continues to suffer enormous financial harm for which it is entitled to monetary recovery in an amount to be determined at trial, and has and continues to suffer irreparable reputational harm to its business for which it has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Uber prays for judgment in its favor and against Defendant Uber Technologies as follows:

(a)    For a preliminary and permanent injunction enjoining Uber Technologies, its respective members, officers, principals, shareholders, agents, servants, employees, contractors, attorneys, successors, and assigns; its divisions, such divisions' respective members, officers, principals, shareholders, agents, servants, employees, contractors, attorneys, successors, and assigns; and those in privity with or in active concert or participation with any of them who receive actual notice of the judgment by personal service or otherwise from any further acts of federal, state, or common law trademark infringement, unfair competition, or false designations of origin;

(b)     For an award of monetary damages in an amount to be proven at trial;

(c)     For an order directed Defendant to pay for and implement a campaign of corrective advertising;

(d)     For costs of this lawsuit;

(e)     For reasonable attorneys' fees;

(f)     For interest as allowed by law; and

(g)     For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Uber hereby demands a trial by jury for all issues so triable in this case.

Dated: March 16, 2020                                   Respectfully submitted,

**LEICHTMAN LAW PLLC**

By:     */s/ David Leichtman*

David Leichtman (DL-7233)
Tatsuya Adachi (TA-1996)

228 East 45th Street, Suite 605
New York, New York 10017
Tel: (212) 419-5210
dleichtman@leichtmanlaw.com
tadachi@leichtmanlaw.com

**TZIMOPOULOS LAW, P.C.**

By:     */s/ George Tzimopoulos*

George Tzimopoulos (GT-6766)
5 Penn Plaza, 19th Floor
New York, New York 10001
Tel: (646) 733-4000
George@Tzimopouloslaw.com

30

**MAVRONICOLAS LAW GROUP PLLC**

By:   */s/ Gregori D. Mavronicolas*

Gregori D. Mavronicolas (GM-4616)

228 East 45th Street, Suite 605
New York, New York 10017
Tel: (646) 484-9569
gmavronicolas@mavrolaw.com

*Attorneys for Plaintiff Uber, Inc.*