UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UBER INC.,

                              Plaintiff,                        20-cv-2320 (PKC)

            -against-                            OPINION
                                                     AND ORDER

UBER TECHNOLOGIES, INC. and ADOMNI,
INC.,

                              Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

           Plaintiff Uber Inc. is a New York City-based company offering design and

marketing services under the name "Uber" since 1999.  In 2010, defendant Uber Technologies,

Inc. ("Uber Technologies") was incorporated, and it has become well known nationally and

internationally for its ride-sharing mobile app, also called "Uber."  As the Uber mobile app

became widely used and Uber Technologies expanded into other services, plaintiff Uber Inc.

found itself on the receiving end of customer complaints, misdirected product shipments, legal

and regulatory correspondence, and other communications intended for Uber Technologies.

           Plaintiff Uber Inc. alleges that beginning in 2019, defendants Uber Technologies

and Adomni, Inc. ("Adomni") made public statements indicating that they planned to expand

into the display-advertising business.  Defendants will display advertisements on a vehicle's

digital signage, a rider's mobile app, and on digital screens like electronic billboards.  Plaintiff

alleges that the parties will be in competitive proximity and at risk of consumer confusion.  Uber

Inc. asserts that its own trademark application with the United States Patent and Trademark

Office ("USPTO") is now stalled based on a description of services that overlaps with a pending, competing application filed by defendants.

The Complaint seeks damages and injunctive relief under the Lanham Act, 15 U.S.C. § 1125(a) and New York law.  Defendants move to dismiss the Complaint under Rule 12(b)(6), Fed. R. Civ. P.  For the reasons that will be explained, defendants' principal arguments are fact-intensive and not properly considered on a motion to dismiss.  Defendants' motion will be denied, except that plaintiff's claim of unjust enrichment will be dismissed.

BACKGROUND.

A. <u>Overview of the Parties.</u>

Plaintiff Uber Inc. is a New York City-based "creative and consulting services agency" that provides marketing and design services.  (Compl't ¶ 2.)  The Complaint describes its business as including graphic design like logos, stationery and brochures; promotional events and mailings; and consumer-oriented campaigns, like magazine advertisements.  (Compl't ¶¶ 2, 36 & Ex. 1.)  Uber Inc. has been retained by well-known brands, including BMW and Macy's, and by companies headquartered throughout the United States.  (Compl't ¶ 2-3, 43-44.)  It was incorporated in New York in 1999, and it promotes itself mainly through the websites www.uber-inc.com and www.uber.nyc.  (Compl't ¶¶ 5, 26, 37-38.)

Since its incorporation, Uber Inc. has continuously used the unregistered word mark "UBER" as a trade name and service mark.  (Compl't ¶¶ 4, 6, 41.)  Plaintiff explains that "Über" is a European word that denotes an outstanding example, and that it chose the "UBER" mark to indicate a high-quality service delivered with "a hint of European sophistication and flair."[1]  (Compl't ¶ 39.)

---

[1] Exhibits to the Complaint indicate that plaintiff Uber Inc. generally markets itself as "Über," with an umlaut. (Compl't Ex. 1.)  The Complaint identifies plaintiff as "Uber," without the umlaut.

Defendant Uber Technologies was incorporated in 2010.  (Compl't ¶ 8.)  It is well known for its ride-sharing mobile app, and in recent years has expanded its business to include food delivery, shipping and workplace recruiting.  (Compl't ¶¶ 8, 46.)  The company's revenue and name recognition have grown quickly since its founding, and it is widely identified with the word mark "Uber."  (Compl't ¶¶ 47-50.)

Defendant Adomni, Inc. is a Delaware corporation that does business under the names "Uber OOH" and "Uber OOH, Inc.," with the term "OOH" denoting "Out of Home." (Compl't ¶¶ 20, 29.)  According to the Complaint, Adomni contracts with billboard owners and other media outlets to place customer advertisements, and operates a platform where advertisers buy units of display time on digital screens.  (Compl't ¶¶ 29, 78, 85.)  The Complaint states that plaintiff has been unable to determine the precise relationship between Uber Technologies and Adomni, and that it is unclear to plaintiff whether Adomni is owned by Uber Technologies or whether it is a vendor.  (Compl't ¶ 86.)  A website for Uber OOH describes itself as "The Official Uber Advertising Network."  (Compl't ¶ 82.)

B.  Plaintiff's Allegations of Public Confusion Between the Parties.

Uber Inc. alleges that in 2012, it first became aware of Uber Technologies and the presence of its ride-sharing business in New York City.  (Compl't ¶ 51.)  Over the "next several years," Uber Inc. received an increasing number of calls and communications intended for defendant Uber Technologies, many of them expressing displeasure with the business practices of Uber Technologies.  (Compl't ¶¶ 52, 61.)  Uber Inc. also has received product shipments and mailings intended for Uber Technologies, as well as misdirected governmental and legal correspondence.  (Compl't ¶ 61, 63.)

As described in the Complaint, incidents of confusion between Uber Inc. and Uber Technologies have grown more frequent with time.  It alleges that Uber Inc. has faced "constant business interruptions and distractions" in the past three years.  (Compl't ¶ 94.)  As an example, one of plaintiff's customers sent plaintiff a large payment that was intended for Uber Technologies, while separately sending a payment to Uber Technologies that was intended for plaintiff.  (Compl't ¶¶ 94-95.)  A vendor mistakenly granted Uber Technologies access to plaintiff's account, resulting in plaintiff's temporary inability to access its own account and giving Uber Technologies access to plaintiff's business information.  (Compl't ¶ 96.)  Plaintiff alleges that it has stopped attending trade shows and sometimes does not answer calls due to overwhelming call volume intended for Uber Technologies.  (Compl't ¶ 97.)

Frustrated with receiving so many misdirected communications, Herta Kriegner, the principal and owner of Uber Inc., successfully sought press coverage about her business being mistaken for Uber Technologies, and raised her concerns directly with Uber Technologies. (Compl't ¶¶ 3, 54-55.)  In or about December 2015, Uber Technologies offered plaintiff $80,000 in exchange for changing the name of Uber Inc.  (Compl't ¶ 56.)  Plaintiff later made a counterproposal in the amount of $800,000.  (Compl't ¶ 57.)  In February 2017, Uber Technologies offered the sum of $120,000.  (Compl't ¶ 59.)  Plaintiff rejected that offer, and, at the time, believed that it was competing in a different field than the transportation-focused business of Uber Technologies.  (Compl't ¶ 59.)

C.  Defendants' Expansion into Advertising and the Status of the Parties' Trademark Registrations.

The Complaint asserts that in 2019, Uber Technology began preparatory steps to enter the advertising business.  (Compl't ¶¶ 76-78.)  It alleges that Adomni and Uber Technologies plan to run advertisements on company vehicles before expanding to a wider

business that links vehicles to advertisements shown on digital billboards.  (Compl't ¶¶ 79-80, 90.)  In 2020, an Adomni website published under the "Uber OOH" name stated that the company would assist clients in creating advertising, and the Complaint alleges that the statement was removed after plaintiff Uber Inc. cited it in connection with this litigation. (Compl't ¶¶ 83-84.)  Uber Inc. alleges that defendants are positioned to provide advertising and design services on an "unprecedented scale," with plans to do business domestically and internationally.  (Compl't ¶ 88-90.)

       As noted, Uber Inc. has long used its "Uber" mark without USPTO registration. (Compl't ¶¶ 4, 6, 41.)  In June 2019, Uber Inc. filed a still-pending application with the USPTO for use of the Uber mark in connection with the advertising and sale of creative design services. (Compl't ¶ 67.)  The Complaint alleges that Uber Technologies has itself filed multiple federal trademark registrations for use of an "Uber" mark.  (Compl't ¶ 70.)  The Complaint alleges that in 2019, Uber Technologies filed a trademark application that described an intent to use an "Uber" mark in connection with advertising, marketing and promotional services, including "promoting third party goods and services."  (Compl't ¶ 72.)  Plaintiff asserts that these contemplated services are within plaintiff's own natural zone of expansion, particularly as they relate to printed materials.  (Compl't ¶¶ 74-75.)

       Uber Inc. alleges that in 2019, it sent a cease-and-desist letter to Uber Technologies, after learning that the latter had submitted a trademark application for advertising services.  (Compl't ¶ 91.)  In September 2019, plaintiff received a response from the USPTO as to its own application, which explained that the application was at risk of rejection due to its similarity to an application of Uber Technologies.  (Compl't ¶ 92.)  According to the Complaint,

the application remains "stalled and suspended" due to overlapping descriptions with the Uber

Technologies application.  (Compl't ¶¶ 69, 92.)

        D.  <u>Plaintiff's Causes of Action.</u>

        The Complaint asserts three claims under the federal Lanham Act and four claims

under New York law.  Count One alleges federal trademark infringement, 15 U.S.C. § 1125(a),

and asserts that consumers are likely to be confused or deceived into believing that defendants

are affiliated with plaintiff Uber Inc.  (Compl't ¶¶ 106-20.)  It asserts that defendants' use of the

Uber marks leaves consumers with a false impression that plaintiffs have authorized defendants'

activities, when they have not, and asserts that defendants have unfairly benefited from the

goodwill associated with plaintiff's mark.  (Compl't ¶¶ 114-17.)  Count Two brings a claim of

reverse confusion under the Lanham Act, 15 U.S.C. § 1125(a), and is premised on a different

type of harm: that consumers will incorrectly believe that plaintiff, as the senior user of the Uber

mark, is infringing the mark owned by defendants, who are the junior users.  (Compl't ¶¶ 121-

32.)  The reverse confusion claim also alleges that consumers are likely to incorrectly conclude

that plaintiff's own commercial efforts originated with defendants.  (Compl't ¶ 126.)  Count

Three alleges unfair competition and false designation of origin under the Lanham Act, 15

U.S.C. § 1125(a), and asserts that defendants' use of an Uber mark misrepresents an

authorization from or affiliation with plaintiff, or, alternatively, falsely represents that defendants

are the true origin of plaintiff's services and that plaintiff is an unauthorized infringer.  (Compl't

¶¶ 133-41.)

        The Complaint also asserts four claims under New York law.  Count Four asserts

injury to plaintiff's business reputation by way of the dilution of its mark, in violation of New

York General Business Law section 360-*l*.  (Compl't ¶¶ 142-47.)  Count Five asserts deceptive

trade practices under New York General Business Law section 349.  (Compl't ¶¶ 148-52.)

Count Six asserts common law trademark infringement under New York law.  (Compl't ¶¶ 153-

57.)  Count Seven asserts common law unfair competition.  (Compl't ¶¶ 158-62.)  Count Eight

asserts unjust enrichment.  (Compl't ¶¶ 163-66.)

RULE 12(b)(6) STANDARD.

          Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing

the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to

the presumption of truth.  Id.  Instead, the Court must examine the well-pleaded factual

allegations and "determine whether they plausibly give rise to an entitlement to relief."  Id. at

679.  "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of

which the court may take judicial notice, that the plaintiff's claims are barred as a matter of

law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d

Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

          A complaint is "'deemed to include any written instrument attached to it as an

exhibit, materials incorporated in it by reference, and documents that, although not incorporated

by reference, are integral to the complaint.'"  Cohen v. Rosicki, Rosicki & Assocs., P.C., 897

F.3d 75, 80 (2d Cir. 2018) (quoting L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d

Cir. 2011)).  The Court may therefore consider such documents, including those submitted by a

defendant, as part of a Rule 12(b)(6) motion without converting the motion into one for summary

judgment.  Holowecki v. Fed. Exp. Corp., 440 F.3d 558, 565-66 (2d Cir. 2006).

DISCUSSION.

      I.      <u>The Complaint Plausibly Alleges a Claim of Reverse Confusion.</u>

Defendants urge that the reverse confusion claim asserted in Count Two should be dismissed because plaintiff has not plausibly alleged certain factors under the well-known <u>Polaroid</u> test.  <u>See</u> <u>Polaroid Corp. v. Polarad Elecs. Corp.</u>, 287 F.2d 492, 495 (2d Cir. 1961). Specifically, defendants urge that the Complaint does not plausibly describe competitive proximity or incidents of actual consumer confusion.  Defendants do not contest that plaintiff's Uber mark is distinctive and entitled to common-law trademark protections, or that plaintiff is the senior user of the mark.

As will be explained, the <u>Polaroid</u> factors require a fact-intensive, context-specific analysis presented on a full record.  Because the Complaint adequately alleges a claim of reverse confusion, defendants' motion to dismiss Count Two will be denied.

The Lanham Act "protects against so-called 'reverse confusion,' where the consumer will believe 'that the junior user is the source of the senior user's goods.'"  <u>Kelly-Brown v. Winfrey</u>, 717 F.3d 295, 304-05 (2d Cir. 2013) (quoting <u>Banff, Ltd. v. Federated Dep't Stores, Inc.</u>, 841 F.2d 486, 490 (2d Cir.1988)).  "In reverse confusion cases, consumers may believe that the senior user is 'an unauthorized infringer, and the [junior user's] use of the mark may in that way injure [the senior user's] reputation and impair its good will.'"  <u>Id.</u> (quoting <u>Banff, Ltd.</u>, 841 F.2d at 490).  "The Lanham Act guards against this 'reverse confusion' to prevent 'a larger, more powerful company [from] usurping the business identity of a smaller senior [trademark] user.'"  <u>J.T. Colby & Co. v. Apple Inc.</u>, 586 Fed. App'x 8, 9-10 (2d Cir. 2014) (summary order) (quoting <u>Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.</u>, 214 F.3d 432, 445 (3d Cir. 2000)); <u>see also</u> <u>Banff, Ltd.</u>, 841 F.2d at 490-91 ("The objectives

of [the Lanham] Act – to protect an owner's interest in its trademark by keeping the public free

from confusion as to the source of goods and ensuring fair competition – are as important in a

case of reverse confusion as in typical trademark infringement.  Were reverse confusion not a

sufficient basis to obtain Lanham Act protection, a larger company could with impunity infringe

the senior mark of a smaller one."); Uber Promotions, Inc. v. Uber Techs., Inc., 162 F. Supp. 3d

1253, 1265 (N.D. Fla. 2016) ("'[R]everse confusion occurs when 'the junior user saturates the

market with a similar trademark and overwhelms the senior user.'") (quoting Fisons Horticulture,

Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 475 (3d Cir. 1994)).

        In determining whether a plaintiff has proved reverse confusion, courts look to the

familiar "Polaroid factors."  See, e.g., Sterling Drug, Inc. v. Bayer AG, 14 F.3d 733, 740 (2d Cir.

1994); J.T. Colby & Co., 586 Fed. App'x at 9-10.  The Polaroid factors are "(1) the strength of

the mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) actual

confusion, (5) the likelihood of plaintiff[s] bridging the gap, (6) defendant's good faith in

adopting its mark, (7) the quality of defendant's products, and (8) sophistication of the

consumers."  Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 116 (2d Cir.

2006).

        "The application of the Polaroid test is 'not mechanical, but rather, focuses on the

ultimate question of whether, looking at the products in their totality, consumers are likely to be

confused.'"  Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 115 (2d Cir. 2009)

(quoting Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 384 (2d Cir. 2005)).  The Polaroid test

"is a fact-intensive inquiry that depends greatly on the particulars of each case," and no single

factor is determinative.  Kelly-Brown, 717 F.3d at 307.  Generally, "when applying the Polaroid

factors to determine likelihood of confusion at a motion to dismiss stage, courts have not

required all factors to be addressed in order to find adequate pleading of a likelihood of confusion."  World Trade Centers Ass'n, Inc. v. Port Auth. of New York & New Jersey, 2016 WL 8292208, at *2 (S.D.N.Y. Dec. 15, 2016) (Swain, J.) (collecting cases).

At the Rule 12(b)(6) stage, the Polaroid analysis is limited to the facts alleged in the Complaint and any documents integral thereto.  Defendants assert that the design and marketing services provided by plaintiff are far afield from the transportation-centered mobile apps of Uber Technologies.  However, the Complaint quotes from defendants' public statements about defendants' intentions to offer advertising services, including statements in Uber Technologies's application to the USPTO for a mark to be used in "advertising, marketing and promotional services" for third parties.  (Compl't ¶ 72.)  The Complaint also points to public comments from Adomni's CEO, who described a scenario where Uber-affiliated vehicles could link to display advertisements.  (Compl't ¶ 80.)  It suffices to note that the Complaint plausibly alleges that defendants' services are in competitive proximity with the plaintiff's graphic design and marketing services.

As to actual confusion, defendants correctly observe that the Complaint fails to identify instances of actual confusion among prospective customers who were seeking out plaintiff's advertising and design services.  See generally Lang v. Ret. Living Pub. Co., 949 F.2d 576, 582-83 (2d Cir. 1991).  Instead, it recites a history of complaints from disgruntled Uber Technologies passengers and drivers, as well as confusion from vendors and legal and regulatory bodies.  But instances of actual consumer confusion are just one of the Polaroid factors, and the Complaint's descriptions of confusion among businesses, official bodies and members of the public provide some factual support for the plausibility of plaintiff's claims.

Among the other <u>Polaroid</u> factors, the Complaint plausibly alleges that plaintiff's Uber mark is arbitrary and distinctive, that the parties' marks are similar, and that defendants' putative entry into the display-advertising market may result in plaintiff bridging the "gap" between its services and those of defendants.  At the pleading stage, the Complaint has plausibly alleged that consumers may mistakenly believe that, despite being the senior user of the mark, Uber Inc. is affiliated with Uber Technologies and/or infringing on the latter's marks, resulting in injury to Uber Inc.'s reputation.  <u>Kelly-Brown</u>, 717 F.3d at 304-05.

Because a more developed factual record is necessary to weigh the <u>Polaroid</u> factors and the competitive context of the parties' marks, defendants' motion to dismiss the reverse confusion claim will be denied.

II.    <u>The Complaint Plausibly Alleges a Claim of Direct Infringement.</u>

Defendants move to dismiss plaintiff's claim of direct infringement on several grounds.  To prevail on a direct infringement claim, a plaintiff ultimately must prove that "1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale . . . or advertising of goods or services,' 15 U.S.C. § 1114(1)(a), (5), without the plaintiff's consent."  <u>1-800 Contacts, Inc. v. WhenU.Com, Inc.</u>, 414 F.3d 400, 407 (2d Cir. 2005) (quotation marks omitted).  A plaintiff must also demonstrate that defendant's use of the mark is likely to cause confusion as to the "affiliation, connection, or association" between plaintiff and defendant, or "the origin, sponsorship, or approval" of defendant's services.  <u>Id.</u>  The <u>Polaroid</u> factors again guide judicial analysis of the likelihood of consumer confusion.  <u>See</u>, <u>e.g.</u>, <u>New Kayak Pool Corp. v. R & P Pools, Inc.</u>, 246 F.3d 183, 185 (2d Cir. 2001).

Defendants principally urge that Count One ought to be dismissed because the Complaint fails to plausibly allege a likelihood of consumer confusion between plaintiff's design-intensive advertising services and the digital, transportation-focused services of Uber OOH.

The Complaint quotes from an Uber Technologies trademark application filed to the USPTO, which describes an intent to use the Uber mark in connection with "advertising, marketing, and promotional services, namely, promoting third party goods and Services" and providing those same services "through on-line medium." (Compl't ¶ 72.) The Complaint asserts that Uber Technologies has developed target lists for geographic markets and industries where it will seek to provide advertising services. (Compl't ¶ 75.) It also cites Uber Technologies's collaboration with Adomni, including screenshots and quotes from conference presentations where an Adomni executive and an Uber Technologies discussed plans to provide advertising services through Uber vehicles. (Compl't ¶¶ 78-82.)

Defendants' argument is largely premised on the conclusory assertion that no consumer can plausibly confuse plaintiff's graphic design-intensive business with the mobile, digitally oriented, "out of home" advertisements offered by defendants. But the Complaint quotes from statements by defendants, including a USPTO application, that express broad ambitions for their advertising services, and not just advertisements displayed on vehicles. Defendants urge that the Court should disregard statements in their trademark applications because such statements are solely for USPTO administrative purposes and do not prove infringing conduct. (Def. Mem. at 23-24.) But, at the pleading stage, those statements lend plausibility to plaintiff's claim. The Court concludes that the Complaint plausibly alleges some competitive proximity between the parties and a likelihood of bridging the gap.

Looking to other <u>Polaroid</u> factors, defendants do not dispute that plaintiff's Uber mark is arbitrary and distinctive and that plaintiff has acquired common-law rights as senior user of the mark.  (Compl't ¶¶ 107-09.)  The Complaint also plausibly alleges that defendants' use of the Uber mark in connection with advertising services was undertaken in bad faith, given that Uber Technologies has long been aware of plaintiff's use of the mark, and, in 2017, offered $120,000 to plaintiff in exchange for changing the Uber Inc. name.  (Compl't ¶ 59.)

Construing the factual allegations in the light most favorable to plaintiff, the Complaint alleges that defendants are expanding into advertising services despite knowing that plaintiff used the Uber mark in connection with its own advertising business.  Because a more developed factual record is needed for the Court to undertake a <u>Polaroid</u> analysis, defendants' motion to dismiss the direct infringement claim will be denied.

Defendants' remaining arguments do not warrant dismissal.  The Complaint includes certain conclusory allegations of direct infringement by two internal divisions of Uber Technologies, "Uber Design" and "Uber Eats."  As defendants note, Exhibit 13 of the Complaint identifies Uber Design as an internal department that is responsible for aesthetic and design aspects of the Uber app, with no discernable connection to third-party advertising.[2]  Uber Eats is a food-delivery business, and the sole allegation that involves third-party advertising related to Uber Eats is an executive's use of the term "ad dollars."  (Compl't ¶¶ 77, 91, 104, 112.)  But Uber Design and Uber Eats are non-parties to this action, and the allegations directed to them are offered as "another example and not limitation" of defendants' alleged activities.  (Compl't ¶

---

[2] The statements in Exhibit 13 largely celebrate the role of aesthetics in society, and include observations like, "Every experience should be magic. When people use our apps, we want them to wonder how they ever lived without them."; "As a diverse team of researchers, strategists, designers, and writers, we're focused on improving current features and imagining new futures for our technology through magical user experiences."; "Our team creates the architecture behind Uber's global identity. We launch campaigns and design standards that give Uber a cohesive look and feel."

77.)  The inclusion of these allegations concerning non-parties do not undermine the balance of the allegations against defendants.

Lastly, defendants urge that the direct infringement claim should be dismissed because Uber OOH has launched advertising businesses in the "test markets" of Atlanta, Dallas and Phoenix.  They urge that the Complaint does not plausibly allege that plaintiff has common law trademark rights in those geographic markets.  In determining whether parties' goods or services are in competitive proximity, a court may consider "whether the products differ in . . . geographic distribution . . . ."  W.W.W. Pharm. Co. v. Gillette Co., 984 F.2d 567, 573 (2d Cir. 1993), superseded on other grounds by Deere & Co. v. MTD Prods., Inc., 41 F.3d 39 (2d Cir. 1994).  There is also some authority that the owner of an unregistered mark may not enjoin a junior user's use of the mark if the junior user adopts the mark in good faith in a geographical market where the senior user is not present.  See Tuccillo v. Geisha NYC, LLC, 635 F. Supp. 2d 227, 245 (E.D.N.Y. 2009) (collecting cases).  At the pleading stage, the Court is unable to determine the significance, if any, of defendants' activities in these "test markets," and Exhibit 15 reflects an intention to establish defendants' advertising business "not just in those three markets, but beyond."  (Compl't Ex. 15 at 18.)

Defendants' motion to dismiss the direct infringement claim will therefore be denied.

III.     Defendants Have Not Demonstrated a Laches Defense

Defendants urge that, to the extent plaintiff's Lanham Act claims are directed toward Uber Technologies's use of the mark in commerce in fields other than advertising, any such claims are barred by the doctrine of laches.  As discussed, the Complaint recites incidents of alleged confusion that pre-date defendants' plans to provide advertising services.  Defendants

urge that the Complaint demonstrates longstanding awareness by the plaintiff of Uber

Technologies's use of the mark, and that plaintiff's claims are barred by the equitable doctrine of

laches.

Because the Complaint does not demonstrate that plaintiff had knowledge of an

actionable claim more than six years before the commencement of this action, the motion to

dismiss on laches grounds is denied.

"[L]aches is a defense developed by courts of equity; its principal application

was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed

time limitation." Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 678 (2014). "While the

Lanham Act includes no specific statute of limitations, in evaluating a laches defense to

trademark infringement in a New York suit, [courts] analogize to New York's six-year statute of

limitations for fraud claims." Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.,

897 F.3d 413, 419 (2d Cir. 2018). "The laches clock begins to run when the trademark owner

'knew or should have known, not simply that [the infringer] was using the potentially offending

mark, but that [it] had a provable infringement claim against [the infringer.]'" Id. (quoting

ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C., 314

F.3d 62, 70 (2d Cir. 2002) (alterations in original)).  For claims brought more than six years after

plaintiff had knowledge of infringement, a presumption of laches arises and the trademark owner

must show the inequity of dismissal.  Excelled Sheepskin, 897 F.3d at 419.  For claims brought

within six years, there is no presumption of laches, and the defendant bears the burden of proving

that it was prejudiced by an unreasonable delay.  Id.

Excelled Sheepskin held that a plaintiff's mere awareness of defendant's use of a

potentially infringing mark was insufficient to commence the six-year period required for a

presumption of laches, and that the district court should have based its analysis on the point in time where defendant began to affix the disputed mark to products in direct competition with those of the plaintiff.  Id. at 419-20.  Also weighing against the application of laches was defendant's awareness that plaintiff "was taking litigious steps" in opposition to defendant's use of the mark, such as contesting defendant's application before the USPTO.  Id.

   Here, the Court is unable to ascertain, on the basis of the pleadings, when Uber Inc. knew or should have known that it had an actionable Lanham Act claim.  The Complaint was filed on March 16, 2020.  (Docket # 1.)  It is true that the Complaint asserts that plaintiff first became aware of the Uber Technologies ridesharing app on May 10, 2012 and states that "for over a decade" plaintiff has received "angry and harassing phone calls intended for Uber Technologies."  (Compl't ¶¶ 51, 61.)  But knowledge of Uber Technologies's use of an "Uber" mark and the receipt of misdirected calls does not equate to knowledge that plaintiff had an actionable claim under the Lanham Act.  In Excelled Sheepskin, there was no dispute that plaintiff had knowledge that defendant was affixing an allegedly infringing mark to clothing items, but the Second Circuit held that the presumption of laches did not attach until plaintiff learned that defendant was using the marks on competing categories of apparel, such as hats and sweatshirts.  897 F.3d at 419-20.  Accepting the truth of the Complaint's allegations, plaintiff had knowledge that Uber Technologies used an "Uber" mark as early as 2012, but there is no allegation that plaintiff knew or should have known of activities in competitive proximity or otherwise-actionable conduct prior to March 16, 2014.

   Additionally, the Complaint alleges that in December 2015, Uber Technologies offered plaintiff $80,000 on condition that plaintiff change its name.  (Compl't ¶ 56.)  Assuming the truth of that factual allegation, Uber Technologies had "awareness that it was entering

contested ground" and was aware of a possible "impediment to its exploitation" of an Uber mark. Excelled Sheepskin, 897 F.3d at 420.  This knowledge on the part of Uber Technologies also weighs against the application of laches at the pleading stage.  See id.

A more developed factual record is necessary to adjudicate defendants' laches defense, and the motion to dismiss on the basis of laches will be denied.

IV.   Plaintiff's Unjust Enrichment Claim Is Dismissed.

Count Eight asserts a claim of unjust enrichment.  To recover on a claim of unjust enrichment, "[a] plaintiff must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered."  Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182 (2011) (quotation marks omitted).  "[U]njust enrichment is not a catchall cause of action to be used when others fail.  It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790 (2012).  Privity between the parties is not a required element, but the parties' relationship must not be attenuated, and a claim for unjust enrichment should be dismissed "where the pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement."  Mandarin Trading, 16 N.Y.3d at 182.  "Without sufficient facts, conclusory allegations that fail to establish that a defendant was unjustly enriched at the expense of a plaintiff warrant dismissal."  Id.

Count Eight states that defendants have been unjustly enriched through their continuous and knowing use of plaintiff's mark without authorization.  (Compl't ¶¶ 163-66.) But the Complaint does not describe a relationship between the parties that involves reliance or

inducement, and plaintiff's allegations of liability and damages are typical of a trademark plaintiff asserting unauthorized exploitation of its mark.  Plaintiff has not identified an equitable obligation running from defendants to plaintiff or plausibly alleged an injury or wrong that does not fall within its other claims.

The unjust enrichment claim will therefore be dismissed.

V.      Dismissal of Plaintiff's Remaining State Law Claims Is Denied.

Defendants move to dismiss plaintiff's claims of deceptive business practices under New York General Business Law section 349, common law trademark infringement and common law unfair competition on the same grounds as it seeks dismissal of plaintiff's Lanham Act claims.  Because defendants' motion is denied as to the Lanham Act claims, it is also denied as to these state law claims.

Defendants also move to dismiss Count Four, which alleges that defendants have diluted or blurred plaintiff's Uber mark, thereby violating section 360-*l* of the New York General Business Law.  (Compl't ¶¶ 142-47.)  "A cause of action based on unfair competition may be predicated upon trademark infringement or dilution in violation of General Business Law §§ 360-k and 360-*l* . . . ."  Out of Box Promotions, LLC v. Koschitzki, 55 A.D.3d 575, 578 (2d Dep't 2008).  "Under section 360-*l* – unlike federal law, the plaintiff's mark need not be famous or celebrated, but it must be an extremely strong mark either because of its inherently distinctive qualities or the fact that it has acquired secondary meaning.  In other words, distinctiveness for the purpose of trademark dilution claims under New York state law has been equated with the strength of a mark for infringement purposes."  New World Sols., Inc. v. NameMedia Inc., 150 F. Supp. 3d 287, 328 (S.D.N.Y. 2015) (Karas, J.) (citations, quotation marks and alterations omitted).  Broadly summarized, a mark is diluted by blurring when a junior user impairs the

distinctiveness of a senior user's famous mark.  <u>See generally</u> <u>Starbucks Corp.</u>, 588 F.3d at 105-

10.  A mark is diluted by tarnishment when a junior user's shoddy product quality or unsavory

actions harm the reputation of the senior user.  <u>Id.</u> at 110-11.

   As with the trademark claims brought under the Lanham Act, the ultimate merits

of a dilution claim are determined by a fact-intensive, context-specific analysis.  <u>See id.</u> at 105-

11.  The Complaint asserts that defendants' "saturation"-level use of the Uber mark has resulted

in the blurring and/or tarnishment of plaintiff's mark.  (Compl't ¶ 101.)  For the reasons largely

discussed, the Complaint has plausibly alleged that plaintiff's Uber mark is distinctive, and that

defendants as junior users have widely and prominently used the mark, possibly impairing its

distinctiveness.  The Complaint plausibly alleges dilution, and the motion to dismiss Count Four

will therefore be denied.

CONCLUSION.

   Defendants' motion to dismiss is GRANTED as to plaintiff's claim of unjust

enrichment, but is otherwise DENIED.  The Clerk is directed to terminate the motion.  (Docket #

40.)

   SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
   February 24, 2021